## Case No. 16,386.

UNITED STATES v. STEPHENSON'S EX'RS et al.

[1 McLean, 462.] [1]

Circuit Court, D. Illinois. June Term, 1839.

SEALED INSTRUMENTS — SCRAWL SEALS — BONDS TAKEN UNDER FEDERAL STATUTES.

1. To constitute a sealed instrument at common law, it must be sealed with wax or some tenacious substance.

2. In this country a scrawl has been generally substituted for a seal, by the legislation of the different states.

[1] [Reported by Hon. John McLean, Circuit Justice.]

3. A bond taken under an act of congress is not governed by the local law of the state where it may be executed.

4. The bond, in contemplation of law, is given at the seat of the federal government; as at that place the officer must account, for the performance of his duties.

5. A bond with a scrawl seal, given under an act of congress, is good.

6. A bond required to be given by congress, must be presumed to be such an instrument as by general usage, is denominated a bond.

7. A scrawl is substituted for a seal, by general usage, both in a popular and legal sense.

[Cited in Tolman v. Spaulding, 3 Scam. 13.]

At law.

Mr. Baker, late U. S. Dist. Atty.

Breese & Davis, for defendants.

OPINION OF THE COURT. This action is brought for a bond given by Stephenson, in his life time, as a receiver of public moneys; and the plaintiffs seek to recover of his representatives and his sureties a balance of moneys received by him but not paid over to the government. The defence set up is, that the act of congress requires a bond to be given, and that the instrument declared on is not a bond, at common law, it not having been sealed. This question is raised by special demurrer. The acts of congress establishing the several land offices, require the "receivers of public moneys, for lands, to give bonds with approved securities." The bond in question has scrawl seals, but there is no act of congress declaring that a scrawl may be substituted for a seal, and it is contended that the common law rule applies. And there is no question that at common law, a bond is a sealed instrument, and that the seal must be formed of wax or some tenacious substance that will receive and retain an impression. 2 Leigh, N. P. 730.

The supreme court of New York have decided in (5 Johns. 244) that an instrument executed in Virginia with a scrawl seal which, by the statute of that state was a seal, but which instrument was to be carried into effect, in the state of New York, could not be considered a sealed instrument. The common law rule, on this subject, prevails in New York. Seals were invented and were in common use, long before the art of writing was in general use. The seal was known by the impress it bore, and the act of sealing was a deliberate and solemn act, which gave greater dignity to sealed than unsealed instruments. This distinction which originated in a rude and barbarous age, has become one of the axioms of the law, and is still rigidly adhered to. The reason on which this distinction was founded is far less forcible now, than it formerly was; but it is still regarded as a settled principle. With few exceptions the legislatures of the different states have, by special acts, provided that a scrawl should constitute a seal. This has been done in Illinois where

the bond was executed, and it is insisted that the local law must govern the instrument in this case. The bond was executed with the condition that the receiver should faithfully discharge his duties, and account and pay over to the government, all monies received by him. He is to account to the proper department at Washington City, and pay the money to the treasurer of the United States at that place, or at such other place as should be directed. In contemplation of law the bond was executed at the seat of government, as that is the place where the chief officers of the executive reside, and to whom the receiver was amenable for the faithful discharge of his duties. The local law, therefore, does not govern the bond either as to its character or effect. It is an instrument given under an act of congress, and must be construed with regard to such act, and the general principles of law which are applicable. [Cox v. U. S.] 6 Pet. [31 U. S.] 173, 203; [Duncan v. U. S.] 7 Pet. [32 U. S.] 435.

The argument is not without force that where a term is used in legislation, which has a technical and well defined meaning at common law, the term is supposed to be used with reference to such meaning. And it is contended that the word "bond" is well understood at common law, and that this rule must govern the instrument under the act. This inference may be admitted, where there are no counteracting circumstances. The case in 1 Bos. & P. 360, was where a bond with a scrawl seal had been given in Jamaica, where the scrawl was recognized as a seal, and a suit was brought on it in England. The pleadings raised the question whether such an instrument could be declared on as a bond; and the court inclined to think it could not be, there being no proof of the usage in Jamaica. The case, however, was compromised, on the debt being paid by the defendant, and the plaintiff paid the costs.

From the reference to the usage in this case by the court, it would seem, that such usage if proved, would be recognized as the law of the contract. But, however this may be, the question for the court to determine is, whether in the act of congress the word bond must be defined by a reference to the common law, or to the usage, founded on local legislation, which obtains generally in the different states. The fact that the states have legislated on this subject, proves the inveteracy of the common law rule; but this does not operate against the inference we are about to draw. There is no common law as exclusively applicable to the federal authority. In the exercise of its judicial functions, it adopts the common law of the state, within which the case arises. But there is no general principle that pervades the Union, as a rule of right or of action, which is independent of the common law recognized in the states respectively. This,

however, is not a question of local law, either statutory or common, but of construction and definition. What did the legislature mean by the word "bond" as used? That they intended to include an instrument, which at common law was denominated a "bond," is admitted, but did they intend to include under the designation of "bond," an instrument having a scrawl seal? This can best be determined by the general use and application of the term in this country.

It would be a dangerous precedent to go out of the country for the meaning of terms used in a statute, which, by common usage, have a definite meaning. The policy of a law is influenced not more by local considerations, than are the words used in the enactment of it. And words thus adopted are not to receive a technical and strained meaning against the popular sense. The principle may be fully and forcibly illustrated in the case under consideration. Congress is composed of representatives from the different states, and in those states with the exception of some two or three, an instrument sealed with a scrawl is as much a bond in its character and effect, as if it were sealed by wax or wafer, or any other tenacious substance. By a law of congress, certain officers are required to give bond; now, must this bond be sealed with wax, &c. or will a scrawl seal be sufficient? A scrawl equally with wax, by general usage, constitutes a seal. Is this general usage to be rejected, and the common law definition of a bond, only to be adhered to? On the contrary, is it not manifest that the legislature constituted as has been stated, legislate under the influence of general usage and popular definition? When the term "bond" is used, may it not, and indeed must it not, be presumed to be used in reference to the generally understood signification, as well in legal proceedings as in popular language? There is no rule of construction which is believed to conflict with this. It affords the only safe standard by which to judge of the language of a popular and representative body. To reject this safe and reasonable rule, for one however venerable for its antiquity, which has been exploded by almost all the states, would be to reject the lights of experience and modern advancement for the maxim of a barbarous and unenlightened age. The general legislation and usage of the states on this subject, may be said to give, in this case, the common law to the federal government. At least that it affords the only safe rule by which the terms used by congress are to be defined and understood. Where a state has adopted the common law, as in New York, and has not legislated on the subject, it is admitted that the common law definition of a bond would, in such state be the correct rule. The parties to the bond under consideration, as appears from its language, have treated the scrawls as seals, and have acknowledged them to be their seals. And shall that which a party calls a seal, and has acknowledged to be his seal, be rejected as such, under a general usage which makes it a seal? We think not. On the contrary, we think in reason and on established principles of construction, the instrument under consideration must be considered a bond within the requirement of the act of congress, and as such, binding on those who signed it. Judgment for the plaintiffs with costs.